[S. F. 188.  In Bank.—February 12, 1897.]

## R. M. TURNER, RESPONDENT, v. M. THEODORE KEARNEY, APPELLANT.

CONTRACT TO HARVEST GRAIN CROP—CONSTRUCTION—STIPULATED FACTS—
    UNNECESSARY LOSS—RECOUPMENT OF DAMAGE.—A contract to harvest,
    thresh, and sack the whole of a grain crop in a thorough and farmer-like
    manner, without waste or unnecessary loss, and to use one or more
    combined harvesters in good working condition, is to be construed in
    view of the surrounding facts, and where, in an action to recover the
    balance due on the contract, it was stipulated that by reason of all the
    grain not being harvested within forty days after it was fit for harvesting,
    there was a loss through its shelling out by wind and other causes, and
    by reason of weeds interfering with the harvesting and cleaning of the
    grain, to the extent of eight hundred dollars; and further stipulated
    that if, as matter of law, under the contract, it was the duty of
    plaintiff to have provided sufficient means to have threshed all the de-
    fendant's grain without waste or unnecessary loss, then said defendant
    is entitled to said amount as damages, otherwise not, the plaintiff con-
    tending that it was only his duty, under the contract, to provide one
    harvester, and to continue the work therewith without cessation, until
    it was finished, the stipulation and contract must be construed as using
    the words "waste or unnecessary loss" in the same sense, and the con-
    tract is to be construed as agreeing to use one or more combined har-
    vesters, as the condition of the grain should indicate, it being known to
    the parties that the necessity for a quick and early harvest must de-
    pend greatly on the season, and as would be necessary that it might be
    done in a good and farmer-like manner, and without waste and unneces-
    sary loss; and, under the contract and stipulation, the defendant is
    entitled to recoup the agreed amount of damage, with interest.
ID.—GENERAL INTENT—REASONABLE CONSTRUCTION.—The clause of the
    contract in regard to the use of one or more combined harvesters, must
    be construed so as to effectuate the general intent manifest in the con-
    tract, and must receive a reasonable construction, and not one which
    seems unreasonable, or which makes the contract such as no farmer in
    his senses would have deliberately made.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.   CHARLES W. SLACK, Judge.

The facts are stated in the opinion of the court.

*Chickering, Thomas & Gregory,* and *Gerstle & Sloss,* for Appellant.

Plaintiff's agreement cannot be reasonably taken to mean that he was to have all of the season of 1893 in which to do the work.   (*Norrington* v. *Wright,* 115 U. S. 188.)   If there is any doubt in the construction of the clause of the agreement requiring plaintiff to use one or more eighteen-foot combined harvesters, this clause must yield to the clause requiring plaintiff to harvest all said grain in a thorough and farmer-like manner, without waste or unnecessary loss.   (Civ. Code, secs. 1641, 1650, 1652, 1654.)

*Freeman & Bates,* for Respondent.

In the construction of contracts, the surrounding facts and circumstances under which the parties contracted and acted must be looked to.   (Bishop on Contracts, secs. 371, 372; Civ. Code, sec. 1647.)   And existing and known customs must be deemed a part of the contract. (Bishop on Contracts, sec. 441; Civ. Code, sec. 1641.) And the contract is to be considered as a whole, and every word and clause thereof given some meaning. (Bishop on Contracts, sec. 384; Civ. Code, sec. 1641.) If there be two or more conflicting clauses, the latter prevails.   (Bishop on Contracts, 389.)

TEMPLE, J.—This is an action to recover balance due on a contract for harvesting grain for the defendant. Judgment was for plaintiff, and defendant contends that there should be a deduction of eight hundred dollars from the judgment, on the ground that plaintiff did not harvest the grain in a good and farmer-like manner as he had contracted to do, and the evidence, and a stipu-

lation made to serve in lieu of evidence, shows that there resulted an unnecessary loss to that amount.

It was stipulated in the contract that plaintiff "will harvest, thresh, and sack all of the grain now growing on the Fruit Vale estate in Fresno county, and belonging to the said Kearney during the current season of 1893; that he will harvest all of said grain in a thorough and farmer-like manner, without waste or unnecessary loss; that he will begin such harvesting as soon as any of said grain is thoroughly ripe and fit for harvest, and will thereafter work continuously until the entire harvest is completed. That for the purpose of performing said work he will use one or more eighteen-foot combined harvesters, which shall be and be maintained in thoroughly good working condition."

A great deal of testimony was taken at the trial on both sides upon the question as to whether the grain ought not to have been sooner harvested, and whether, in consequence of delay, there was not unnecessary loss resulting from the grain being shelled out by the wind, or the growth of weeds, which prevented an efficient harvesting thereof. Many of the facts were then agreed upon by a stipulation made at the trial, as follows:

"It is hereby stipulated and admitted by the parties hereto, for the purposes of the present action, that the plaintiff entered upon the performance of the contract referred to in his complaint and annexed to defendant's answer, to wit, on or about the twelfth day of June, 1893, and as soon as defendant's grain was ripe and fit for harvesting; and that the plaintiff harvested the grain on defendant's land in a thorough and farmer-like manner, without waste or unnecessary loss (except such loss as may have resulted from the delay hereinafter specified), and that the plaintiff worked continuously with an eighteen-foot harvester, and its appliances and crew until the work was completed, to wit, August 29, 1893, and that on August 12, 1893, he brought another harvester to work, and both harvesters and their crews and appliances were thereafter continuously engaged in

the work until it was completed, and both harvesters were maintained in a thoroughly good and working condition.

"That after grain is fully ripe and fit for harvesting in the neighborhood in which defendant's grain was, it is liable to be shelled out by wind and other causes and thereby lost. The defendant's ground was subirrigated, on which there was a tendency for weeds to grow in and among the grain, and the longer they were permitted to grow, the greater was the probable loss in harvesting, by reason of such weeds growing as high or higher than the grain, and interfering with the threshing and cleaning of the grain while passing through the harvester. That by reason of all the grain not being harvested within forty days after it was fit for harvesting, there was a loss through its shelling out and by reason of such weeds interfering with the harvesting and cleaning of the grain, and such loss, the parties agree, amounted to eight hundred dollars, and no more; and if as a matter of law, under said contract, it was the duty of the plaintiff to have provided sufficient means to have threshed all the defendant's grain without waste or unnecessary loss, then it is agreed that the damages resulting from his not furnishing other machines and appliances than those hereinbefore indicated amounted to eight hundred dollars, and no more; and if, on the other hand, it is found as a matter of law that it was not the duty of the plaintiff to avoid waste or unnecessary loss, then that the defendant is not to be allowed any damages in this action."

The contract itself must be construed in view of the surrounding facts as shown in the stipulation. It is there expressly admitted that there were special reasons why the grain should be harvested as soon as possible after it was ripe, and that the grain was not harvested within forty days after it was fit to be harvested, and that not to so harvest it entailed waste and unnecessary loss to the extent of eight hundred dollars, and it is further stipulated that if it was the duty of the plaintiff,

CXVI. CAL.—5

under the contract, to harvest the grain so as to avoid waste and unnecessary loss, then defendant is entitled to the said amount as damages, otherwise not.

The stipulation cannot, of course, be construed to mean by the phrase "unnecessary loss" any loss which it would be possible to avoid by the greatest possible care and diligence and by the best possible appliances. Such interpretation would make the stipulation a farce or a trick. One party was contending that the agreement to harvest the grain in a good and farmer-like manner required that it should be harvested in time to avoid unnecessary loss—that is, such loss as would not be suffered if it had been so harvested in proper time— and the stipulation must be held to mean also that the loss was eight hundred dollars more than would have occurred if the grain had been so harvested.

I think we may start out with the proposition that no one would be likely to contract for the harvesting of his grain in a manner which would entail unnecessary loss in that sense, and much less would he, in such a contract, provide that the harvest may be so gathered as to cause such loss.

Plaintiff contends that two conditions in the contract do have that effect, and, in substance, he contends that they were put in the contract for the express purpose of saving plaintiff from liability for such loss, provided he commenced the harvest in due time with one harvester and continued the work without cessation until it was finished, and while at work did good work. In other words, the contract provides the test of due diligence, and that if at least one harvester is used it shall be deemed enough.

The two stipulations in the contract referred to are that plaintiff will harvest all the grain now growing during the current season of 1893, and that he will use one or more harvesters, and keep it or them in good working condition. It is difficult to give any meaning to the phrase " current season " which shall indicate a time within which the work must be done. If it means

the time within which that grain should be harvested, it is favorable to defendant. If it alludes to the time of harvest generally, it is very indefinite. We all know that grain ripens at different times on different kinds of soil and in different localities. No practical meaning can be given to it other than the harvesting season for that crop.

The necessity for a quick harvest must depend greatly upon the season. The contract covered two thousand three hundred acres of growing grain. In that locality high winds are frequent at that time of the year, and it seems that early harvests are essential to good harvests in a farmer-like manner, not only because of prevailing winds which cause overripe grain to shell, but also because at that time weeds begin to grow which interfere with harvesting and entail loss. These facts were known to the parties when the contract was made. Now the parties could not know that the season would not be such that grain would be almost wholly lost unless unusual exertions were made for a quick harvest. On the other hand, they did not know but it would ripen slowly so that one harvester would suffice. I think it part of the common knowledge that combined harvesters are comparatively a recent improvement. By this stipulation the parties agreed that it should be harvested with a combined harvester, and that one or more should be used as the condition of the grain should indicate, and as would be necessary that it might be done in a good and farmer-like manner and without waste and unnecessary loss.

If there is any doubt as to the purpose of the clause in regard to the use of one or more harvesters, it must, if possible, be construed so as to effectuate the general intent manifest in the contract. The construction given by the respondent seems unreasonable, and makes the contract such as no one in his senses could have deliberately made. (See on this subject, Civ. Code, sec. 1650.)

The case is remanded, with directions to modify the judgment by deducting eight hundred dollars, with interest on that sum from August 29, 1893.

HARRISON, J., HENSHAW, J., and VAN FLEET, J., concurred.

McFARLAND, J., dissenting.—I dissent. It will be observed that appellant's real contention is that respondent should have finished harvesting within forty days after the first grain was ripe; that for this purpose he should have used more than one harvester; and that because he did not use more than one harvester, and did not complete the harvesting within the forty days, therefore he failed to " harvest all said grain in a. thorough and farmer-like manner, without waste or unnecessary loss." But respondent did not contract to harvest the grain at any particular time, except that it should be done " during the current season of 1893," and it is clear that it was done within that season. He did not contract that he would use more than one eighteen-foot combined harvester. He began to harvest as soon as the grain was ripe and fit for harvest, with an eighteen-foot combined harvester, and thereafter worked " continuously until the entire harvest was completed." While he was so engaged he did the work " in a thorough and farmer-like manner, without waste or unnecessary loss." He, therefore, complied with his contract. No doubt it would have been to appellant's advantage if respondent had put on two or three or a dozen eighteen-foot combined harvesters, and had completed the work of harvesting within a week or two. But he did not contract so to do; and appellant did not require or ask any such a covenant. There is no provision in the contract that respondent should finish the work at any particular time other than during the current season; and the only other provision as to " delay" is that respondent should commence as soon as the wheat should be fit to cut, and should continuously prosecute the work until the harvesting was finished. This he did. Therefore, in my opinion, the court below properly construed the contract, and the judgment and order should be affirmed.